## CONKLIN *vs.* THOMPSON.

In an action *ex delicto,* for an injury to the plaintiff's property occasioned by the wrongful act of the defendant, the infancy of the defendant is no protection. He is as fully liable for the damages sustained as if he were of full age.

The act of exploding fire crackers, in the public streets of a city, is wrongful and unlawful; and if any injury to the persons of individuals, or to property animate or inanimate, results therefrom, the wrongdoer is liable to compensate the sufferer.

Where an action is brought to recover the value of a horse, which the plaintiff

claims died of sudden fright, caused by the explosion of a fire cracker thrown under him by the defendant; while the defendant insists that the death of the horse resulted from over-driving, in warm weather; and there is evidence in support of each theory, it is the province of the jury to decide the question in regard to the cause of the animal's death; and they having found a verdict in favor of the plaintiff, the court will not interfere with it.

THIS action was commenced in a justice's court, of Dutchess county. The complaint alleged that on the 4th July, 1857, the plaintiff was peaceably and lawfully driving a horse of the plaintiff, attached to a wagon, through the streets of Poughkeepsie; and while so driving through said streets, the defendant designedly and intentionally and willfully threw a lighted fire cracker under the plaintiff's horse, which exploded under the said horse, and so frightened him by said explosion that in consequence thereof he died immediately; and the plaintiff averred that the noise caused by the explosion of said fire cracker so frightened said horse as to produce his death; that said horse was worth $100; and the plaintiff claimed damages to that amount.

The defendant, by his answer, denied each and every allegation in the complaint, and averred that the plaintiff caused the death of his horse by severe and continuous .driving on said 4th of July. That the plaintiff caused the death of his horse by forcing him through the streets of the city of Poughkeepsie on a day when he knew that by law and by custom, cannons, guns and crackers were fired and exploded in the streets of said city, well knowing that his said horse was liable to take fright from such noise. That said horse was old and diseased, and that his death was produced by being overheated by too great driving. The material portions of the testimony are referred to in the opinion of the court. The defendant was an infant, about 14 years of age, at the time of the occurrence. The jury found a verdict in favor of the plaintiff for $60 damages, and the justice entered judgment for that sum, with costs; which the county court, on appeal,

reversed. And from the judgment of the county court the plaintiff appealed to this court.

*W. S. Eno,* for the plaintiff.

*I. F. Barnard,* for the defendant.

*By the Court,* Brown, J.   This is an action *ex delicto,* for exploding a fire cracker under the horse of the plaintiff while traveling upon one of the public streets in the city of Poughkeepsie, whereby the horse became frightened and fell down and died. If the death of the horse resulted from the wrongful act of the defendant, infancy is no protection. He is as fully liable for the damages as if he had been of full age.

Nor can there be any doubt that the act of the defendant was wrongful and unlawful. The plaintiff was in the rightful use and enjoyment of the public highway, passing from his own home in the town of Stamford to the city of Poughkeepsie, upon business or pleasure, or both. The road was created for these uses, almost solely ; and the plaintiff and all others had the right to pass over it without interruption or annoyance of any kind. The streets of a city, and highways every where, are not unfrequently appropriated to the uses of exploding fire crackers and similar contrivances. Such acts are nevertheless wrongful. They are tolerated and not authorized, and those engaged in committing them assume the responsibility of all the bad consequences which ensue. Any injury to the persons of individuals, any injury to property animate or inanimate, which result thereby, create a liability on the part of the wrongdoer to compensate the sufferer.

The question whether the defendant was requested by the plaintiff not to explode the cracker before the horse began to reel and fall, was much disputed at the trial. The evidence was quite contradictory. It was not important, however, in any view. If the act was done after the defendant was requested to desist, it would undoubtedly show that the boy was thought-

less and reckless of the consequences of his acts, but it could not affect the principal question. If the death of the plaintiff's horse was the result of what he did he was liable to an action, whether he was requested to desist or not.

The real question litigated at the time was upon the cause of the death of the horse. The proof showed that the defendant threw the lighted cracker under the horse, where it exploded; that the horse appeared much frightened, sheared towards the sidewalk, reeled and fell, and almost immediately expired. He was proved to have been, up to that time, in good health, was 18 years of age, and had traveled from Stamford, a distance of twenty-two miles, in five hours, the morning he died, which was the 4th of July, and which was a cool day for the season of the year. Some of the witnesses thought he died from appoplexy, and some from fright or fear. Benjamin S. Wilber, a physician of forty years' practice, said that sudden fright often results in death—immediate death. Fright, he says, sometimes produces appoplexy. Robert Jackson, a horse farrier of twenty-five years' standing, thought the horse died of appoplexy caused by over-driving, and he thought that fright or fear would not result in appoplexy, but would produce what he calls palpitation. The theory of the plaintiff upon the trial was, that the horse died of sudden fright caused by the fire and explosion of the cracker; while the theory of the defendant was, that his death resulted from over-driving in warm weather. No over-driving seems to have been proved; and it did appear that up the time of the explosion the horse appeared in good health, and then became excessively frightened, staggered, reeled, fell down and died. Whose province (it may be asked) was it to determine between the theory of the plaintiff and that of the defendant in regard to the death of the animal? It was an issue involved in some doubt, certainly; and there was evidence upon both sides, and in favor of both views of the accident. Was it the province of the court, or that of the jury, to decide? It was a single naked question of fact, unmingled and unembarrassed

by any legal considerations.  Its determination, therefore, according to the theory of our law, and the frame of our judicial tribunals, belonged exclusively either to the court or the jury; and I am not mistaken when I think that to the latter alone belonged the decision of the question; for I think it would be difficult to frame an issue and offer evidence to prove and disprove it, on either side, which would be more exclusively within the province of a jury than this was.  The jury empanneled to try the action found in favor of the plaintiff, and there, I think, the litigation should have ended.  Neither this court nor the county court can, I think, interfere with such an adjudication.

The judgment of the county court should be reversed, and that of the justice's court affirmed.

[DUTCHESS GENERAL TERM, May 9, 1859.  *Lott, Emott* and *Brown,* Justices.]