# N. Y. Court of Appeals.

*October*, 1885.

RICHARD ROLLINS, Plaintiff and Respondent, *against* PATRICK FARLEY, Defendant and Appellant.

Where the evidence fairly raises the question whether an explosion of cartridges was caused by contact with a steam-pipe under the charge of the defendant's employee, and by reason of his negligence, or by spontaneous combustion originating from a defect in the manufacture, the question presented is one of fact for the jury ; and, where there is evidence sustaining the former conclusion in preference to the latter, a verdict of the jury against the defendant, holding him liable for negligence, will not be disturbed.

The plaintiff sued to recover damages for injuries done to his property by an explosion of dynamite cartridges known as " bolognas," under the following circumstances :

In November, 1881, the defendant, who is a contractor, was engaged in removing rock from certain lots on the north side of Seventy-third street, between Second and Third avenues, in the city of New York. On the 21st of that month an explosion of cart.idges occurred which shattered the buildings in the neighborhood, breaking glasses, injuring the plastering and doing other damage. The plaintiff, on his own behalf and as assignee of five other property owners, brought the present action to recover for the injury done to their property.

Judge McAdam, before whom the action was tried in the city court, November 10, 1882, declined to dismiss the complaint; and the jury found for the plaintiff. The judgment having been affirmed on appeal by the city court and common pleas general terms, the defendant, by leave of the latter court, appealed to the court of appeals.

*E. P. Wilder*, for appellant.

*J. P. Reed*, for respondent.

FINCH, J.—The argument in behalf of the defendant founded upon his proof tends to demonstrate that the cartridges ought not to have exploded at all; and did so without any assignable reason. Concussion, as cause or occasion, is very clearly put beyond the range of admissible theories, for the proof shows that no one was near to throw a missile or strike a blow; and the explosion followed ignition and was consequent upon that. How the cartridges took fire became the question in the case, and the inquiry very soon settled down to a choice between the two alternatives, of ignition from the heat of the steam-pipe, or spontaneous combustion, originating in some unknown and unsuspected defect in the manufacture. The latter has no evidence to support it, unless the former is so utterly disproved as to make such defect the only possible explanation. That is the contention on.

behalf of defendant, and the verdict of the jury to the contrary is assailed as wholly without evidence to support it and conclusively disproved.

The plaintiff proved the defendant's own admission that the explosion was caused by the steam-pipe, and his promise to pay the damages which resulted. The defendant denied it, but the jury were at liberty to believe, and, we must assume, did believe, the fact of the admission. It had a peculiar force and significance from some attendant circumstances. The defendant was not present at the occurrence itself. He came upon the ground after the explosion. He could know nothing of it except from noticing its locality and from inquiry. The man who thawed out the cartridges and placed them on the ground awaiting their use was Monahan, the defendant's foreman, who had charge of them, and knew, if anybody did, what caused the explosion. Presumably, the defendant inquired of Monahan and received his explanation, and, with knowledge thus acquired, admitted that placing the cartridges on the steam-pipe occasioned the explosion. And what makes this more significant is the fact that Monahan was not called as a witness, and the only explanation given of his absence is that the defendant told him to quit work and come to the trial, and defendant did not know the cause of his absence. The witness of all others most important to the discovery of the truth was missing without apparent reason. The jury were entitled, first, to believe the making of the admission, and next, that it was made from knowledge derived from Monahan at the time.

But it is said the possibility of this theory of the cause of the explosion was utterly disproved, because it was shown that the cartridges could not have been laid upon the steam-pipe, since that was buried in the earth; that they could only explode at a heat of three hundred and seventy degrees, and that the engine, carrying but eighty pounds of steam, could not heat the pipe to that degree.

The pipe was buried in the earth, but the boiler-house

Rollins v. Farley.

stood on the sidewalk and the steam-pipe to run the drills passed perpendicularly down the side of the house before it entered the ground. The evidence does not directly show whether this perpendicular section was outside or inside of the boiler-house. If inside, contact with the cartridges as they were placed would have been utterly impossible. But it may have been, and probably was, on the outside ; in which case actual contact was possible at the point where the descending pipe reached the surface of the ground. The defendant's proof is, however, that the cartridges lay from one to three feet from the steam-pipe ; but none of the witnesses were near enough to the powder to make their observation at all reliable. Monahan, who laid them down, might have accurately known, but he did not testify. Henry Bennett says the cartridges " might have been a foot or two feet " from the pipe ; but he was seventy-five or one hundred feet away, and is the only witness called upon that subject, although others among the workmen were nearer. There were ten or fifteen of these cartridges in the pile which exploded, and it is quite certain that one of them at the bottom of the heap might have been in actual contact with the pipe, while to an observer some distance off, the pile might seem to have been a foot away. So that the possibility, and therefore the probability, of actual contact is not conclusively disproved.

It is further said, however, that a heat of three hundred and seventy degrees is requisite to an explosion, and that the steam under a pressure of eighty pounds would not possess a heat greater than two hundred and eighty degrees. But no witness tells us at what heat the powder would ignite, unless it be Dowdney, who was a contractor, and who said it would require a heat high enough to ignite paper. That assumes that the paper covering the powder had no opening or breaks in it, and that none occurred in the process of handling, and further takes no account of the great probability that the paper covering

might so absorb the qualities of the powder as to ignite with very little less of difficulty than the powder itself. But Ditman, a manufacturer of the article, swore that if the carriages were put directly on the pipe and the steam was very high, an explosion might result. Dowdney said they might explode at a temperature of two hundred and fifty degrees, if confined so that the gases would not escape. We are thus without proof of the heat necessary to ignition, and that is the vital point of the case ; for the explosion was caused by ignition, and one of the experts explained the fact. These cartridges, placed in a pile and lighted at the top, would burn down to an ash without explosion, but lighted at the bottom accumulate heat in the pile until the exploding temperature was reached. All agree that the powder smoked, and then burned for some period before the explosion,—one of defendant's witnesses putting that period at two or three minutes ; and it is further testified that the side of the boiler-house took fire, and of course added its heat. Given the fact of ignition, and the consequent explosion is entirely plain, and the defendant utterly fails to show at what heat the cartridges in contact with a steam-pipe would ignite.

As to the evidence of the heat of the steam-pipe several suggestions occur. The steam begins to form near the boiling point of water, and, at one hundred pounds of presure, is described as heated to about two hundred and eighty degrees. But does that necessarily show the heat of the pipe ? May not the iron grow many degrees hotter ? There is no proof upon that subject. One witness, asked if the pipe was hot, answered with emphasis, " decidedly." The cartridges had already been made sensitive by the process of thawing, and if Monahan laid them down so that some of them touched the hot iron of the pipe, it is not made impossible by the evidence that ignition followed as a consequence. At all events, the proofs fairly raised for the consideration of the jury the question whether the cartridges were fired by contact

with the pipe, and so through the negligence of Monahan, or by spontaneous combustion originating in a defect of manufacture.

The proof permitted and indicated the former conclusion in preference to the latter, and the verdict of the jury had evidence to support it. The judgment should be affirmed.

All concur.

## JUDGE McADAM'S CHARGE.

*Gentlemen :* The plaintiff, in his own right, and as assignee of five others, brings this action to recover $291.19 for damages done to the property of the plaintiff and his five assignors, by an explosion which occurred on November 21, 1881, on certain lots on the north side of Seventy-third street, between Second and Third avenues, in the city of New York,

That an explosion occurred on that day is conceded, but how it originated is clouded in doubt and uncertainty, no light whatever having been thrown in upon the subject, excepting that which may be drawn or gathered from the fact that some ten, twelve or more explosives called by the experts " bolognas," and used in blasting rocks, were stored on the ground in question near the engine-house which ran the drill for blasting, and that these were discovered to be on fire by Mr. Bennett, the engineer, that greenish smoke and fire resembling that which comes from a Roman candle was seen to arise, and that the flame grew heavier and heavier until the final explosion occurred, shattering the doors and windows of all the houses in the neighborhood and doing the damage of which the plaintiff complains.

That the plaintiff and his assignors were sufferers by this explosion is clearly established, but whether the defendant is bound to respond to the plaintiff for these damages depends upon several considerations which you will be required to pass upon.

In the first place, I charge you that the defendant is not liable for the injuries claimed, unless the explosion was the result of negligence upon the part of the defendant or his employees. Negligence must in the nature of things depend upon some act of commission or omission; that is to say, the party complained of must, in order to be guilty of negligence, commit some act which is pernicious and dangerous in itself, or he must omit to exercise the care which, under the circumstances, men of ordinary prudence would naturally give to the subject in charge.

Having the "bolognas" on the lots in question for the purpose of blasting was not unlawful, and does not, in itself, impose on the defendant any responsibility for the explosion which followed, unless you find as matter of fact that there was some act of negligence in the use, mode of storage or handling of the "bolognas" the consequences of which caused the damage for which a recovery is sought.

The supreme court, in Heeg v. Licht (16 *Hun*, 258), said: "Gunpowder is an article of commerce, and may be lawfully manufactured, kept and sold. The right to store and keep it must ensue from the right to make and sell it. There is nothing inherent in the thing itself which makes it obnoxious to the senses, or dangerous to either life, health or property. Its character and qualities are well understood, and with proper care and caution it may be handled with security and used with safety. The danger of the article consists in its liability to ignite and cause an explosion, and the necessity for interfering with its use, or the place of its deposit, arises from this quality. If it be kept in such a place and in such a manner as to be dangerous to life or property, it is doubtless a public nuisance, and whether or not it be such, in any particular case, depends upon circumstances, the most prominent and important of which are the place and mode of keeping, and the quantity kept." That is the rule as laid down by the supreme court, and I state it to you as

---

Rollins v. Farley.

---

the law.  Unless, therefore, you find negligence upon the part of the defendant, find a verdict in his favor, for he is not liable, if the explosion was the result of an unavoidable accident.

If, however, you find that the explosion was the result of negligence upon the part of the defendant or his employees, either in the place of deposit or the mode of handling of these bolognas, then it will be your duty to find a verdict for the plaintiff and assess the damages which he and his five assignors suffered in such sum as the evidence establishes, not exceeding $291.19, the amount claimed.

*Defendant's Counsel.*—I request the court to charge : 1st. That the burden of proof is on the plaintiff to show negligence, and not on the defendant to show absence of it.

THE COURT.—I so charge.

*Defendant's Counsel.*—2d.  That if this injury occurred through some unaccountable cause which could not be foreseen, the defendant is not liable.

THE COURT.—I charge that.  In other words, if it was an unavoidable accident, he is not liable.

The jury found a verdict for the plaintiff, and against the defendant, for the sum of $291.19.

### Care required from those having Explosives.

As to liability for the explosion of steam-boilers, see 1 *Thompson on Neg.* 112 ; 2 *Id.* 990 ; Losee v. Buchanan, 51 *N. Y.* 476 ; Marshall v. Wellwood, 38 *N. J. L.* 339 ; Jaffe v. Harteau, 56 *N. Y.* 398.  The amount of care required seems to be nothing more than ordinary care, measured by the perils of the particular situation (2 *Thompson on Neg.* § 990).  Where an excess of steam is carried, see Carroll v. Staten Island R. R. Co., 58 *N. Y.* 136 ; S. C., 17 Am. R. 221.

### Liability for Damages caused by Blasting Rocks.

On this subject, see 1 *Thompson on Neg.* 113, where the cases are collated.  See also Hay v. Cohoes Co., 2 *N. Y.* 159.

### Liability for Explosion of Fire-works.

As to this liability, see *Wharton on Neg.* § 881 ; Conklin *v.* Thompson, 29 *Barb.* 218.

### Liability for explosion of Fire-arms.

An adult is liable who carelessly gives a loaded gun to a child or inexperienced person (Dixon *v.* Bell, 5 *M. & S.* 198).

### Alternative Perils.

If the defendant's negligence puts the plaintiff in a position in which he is forced to make a perilous choice of alternatives and is injured, the defendant is liable for the consequences (see *Wharton on Neg.* §§ 93, *et seq.* and cases cited).