JOHN SROKA, *p. a.*, *vs.* FRED F. HALLIDAY *et al.*

STANISLAW SROKA *vs.* FRED F. HALLIDAY *et al.*

JUNE 23, 1916.

PRESENT:   Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Negligence.   Fireworks.   Principal and Agent.   Municipal Corporations.
Committees.*

The City Council of Pawtucket under authority of Pub. Laws, cap. 658, appropriated a sum of money for the celebration of July 4th and appointed a special committee of its members to arrange therefor.   Certain members of a business men's association were admitted by the committee to act with them and all organized as a general committee, and appointed a subcommittee on fireworks, consisting of two members from the city council committee and one from the business men and a sub-committee on the whole matter consisting of one member from the city council committee and two from the business men.   The business men's committee also raised a fund in addition to the city appropriation, but the evidence did not disclose whether it was used.

The general committee voted to leave the matter of fireworks in the hands of the fireworks committee and that committee executed a contract with a

company to furnish the fireworks "in a manner satisfactory to the Fourth of July committee," the company agreeing to save the city harmless from any loss or damage occasioned by any negligence of the company.

The display of fireworks was produced by the company as a result of which a bomb which fell unexploded some 500 feet from the place of discharge was found by a child of seven years of age some week later and being ignited by the child exploded severely injuring him.

*Held,* that the entire action of the city council committee in associating the outside members with them and in permitting them to act as stated was· unauthorized, but even if the council committee had acted solely by themselves they still had the same duties to the public and to the plaintiff and would have been liable.

*Held,* further, that as the general committee was organized they were not acting as duly authorized agents of the city, and the members appointed by the city council in associating the outside members with them must be deemed to· have acted upon their personal responsibility, together with the others whom they permitted to join them.

*Held,* further, that by all joining in the special plea the members of the committee appointed by the city had placed themselves in the same situation as the outside members, subject to the same duties and liabilities.

*Held,* further, that the general committee as organized had no authority without the special license required by Gen. Laws, 1909, cap. 134, § 4, to· permit a display of fireworks, the resolution of the city council appointing its own committee, making no reference to the subject.

*Held,* further, that the payment of the bill for the fireworks was of no significance, as it did not appear that it was paid by direction of the city council· or that it was even paid by the city.

*(2)   Independent Contractors.*

*Held,* further, that the company who made the display of fireworks was not an independent contractor, since the manner of doing the work was subject· at all times to the full control of the committee, and the mere fact that the company was permitted to make the display without interference by the· committee was immaterial.

*(3)   Independent Contractor.   Acts in Their Nature Dangerous.*

*Held,* further, that if the company had been an independent contractor it· would not exonerate the defendants, for where the contract calls for the· doing of things which are in their very nature liable unless precautions are taken to do injury to others, a duty arises on the part of the contractee to see to it that these precautions are taken and he cannot escape his duty· by turning over the whole performance to a contractor.

*(4)   Negligence.   Fireworks.   Public Nuisance.*

*Held,* further, that in view of the facts of the case, showing that a large number· of bombs were so discharged that the debris came down on private property at a distance and where people were standing to watch the display and that· several bombs which failed to explode came down at a distance of upwards· of 500 feet from the display on private property and that one of such bombs·

caused the injury complained of it was a question for the jury whether the display was in fact a nuisance liable to cause injury by reason of the manner in which it was conducted and as to the negligence of the defendants through their agents, the case being founded not on a nuisance *per se* where no negligence need be proved, but in permitting to be done acts in themselves dangerous on account of the explosives requiring special precautions to prevent injury and in permitting bombs to be so discharged by their agents as to fall upon private property while unexploded and there to remain without recovery until found by plaintiff.

(5)   *Public Officers.*

*Held,* further, that the members of the general committee were in no sense "public officers."

(6)   *Negligence. Fireworks. Evidence.*

In an action for negligence arising out of a display of fireworks by a committee having charge of the celebration, Q. "as to that location from your experience as a member of the sub-committee on fireworks do you consider it a good location for setting off the fireworks ?" was objectionable since witness had not been qualified as an expert in fireworks displays, while he might have been asked what had been done in this lot on previous years and if he knew the nature of the previous displays by way of comparison and whether any previous damage had been done.

(7)   *Negligence. Fireworks. Evidence.*

In an action for negligence arising out of a display of fireworks by a committee having charge of the celebration, evidence as to the financial responsibility of the company furnishing and firing the display for the committee, which company was not a party to the action was properly excluded.

TRESPASS ON THE CASE for negligence.   Heard on exceptions of plaintiff and sustained.

PARKHURST, J.   These two actions were tried together before a justice of the Superior Court, sitting with a jury. They are actions of trespass on the case for negligence brought against the members of a committee on the celebration of the Fourth of July held in the city of Pawtucket in the year 1912.   The first action is brought by a minor for personal injuries by his next friend, his father: the second action is brought by the father for the loss of services of said minor child.

It appears that the plaintiff, John Sroka, at the time of the injury, was a child of about seven years of age and lived with his parents at 321 North Main Street, in the City of

Pawtucket, North Main Street being on the west side of the Blackstone River some six hundred feet distant from Goff's Lot, so-called, which is on the east side of said river, and upon which lot fireworks of varied character, including numerous aerial bombs, were set off during the day and evening of July 4, 1912. The plaintiff, John Sroka, received the injuries complained of on July 12, 1912, while at play in his own yard at 321 North Main Street, with two other boys, one of them about seven years old, the other four or five years old. The youngest child found there an unexploded bomb and brought it to the others and they played with it; they found a match in the yard which was applied to this bomb while it was in the hands of the plaintiff, it then and there exploded most severely injuring the plaintiff, blowing off the palms of both hands and all the fingers except the index finger of the right hand and the little finger and the next finger on the left hand, breaking both arms, and causing a severe injury to the right knee, a slighter injury to the left knee, and causing severe powder burns of the face and body. The evidence shows that the fireworks program which was carried out on said July 4, 1912, included three salutes of twenty-one aerial bombs each at six o'clock A. M., twelve o'clock noon, and six o'clock P. M.; it also appears from the evidence of Damiani himself who fired these salutes, and also the evening display, including a large number of aerial bombs, that one of the bombs fired at the noon salute failed to explode in the air and came down unexploded near him on Goff's Lot, and that Joseph Ricci (the agent of the Fireworks Company whose name appears as Ritchie in the transcript) was there at the time and recovered this bomb, and that later Damiani fixed it and fired it when it exploded in the air as it was intended.

The evidence further shows by several witnesses that at the six o'clock P. M. salute not less than three of these aerial bombs were seen to fall unexploded; one of them was seen to fall into the river, and two were seen to fall on the west side of the river, some 500 or 600 feet away from the

place of their discharge and upon or in the immediate vicinity of the premises of the plaintiffs at 321 North Main Street. One of these latter bombs was found in the lot next north of plaintiffs' by some young men who were watching the display and saw these bombs fall, and was afterwards exploded by them; they searched for the other, but did not find it. There is no evidence that other bombs of this nature were discharged by anyone else in the city of Pawtucket during the day or evening of July 4, 1912. Damiani also testified that all the saluting bombs sent up by him at six o'clock P. M. exploded in the air as intended; but in this he is opposed by several witnesses who were in the vicinity of 321 North Main Street and who testified that the bombs fired at the six o'clock P. M. salute,—many of them exploded over the heads of the witnesses some 500 or 600 feet away from the place of firing, and at least three were seen to fall unexploded as above stated. Damiani in speaking of these bombs said he knew that they exploded because he kept watch to see where they were going, viz.: "Well, of course, when you shoot a bomb from the ground and it goes up, you don't shoot any more until you see where the other one goes because I watch out for myself and a fireworks man has to look out, otherwise it will fall on his head and kill him." (Tr. p. 258). This piece of testimony is quite significant in that it shows that Damiani, who fired all these bombs, having had notice at noon that some of them were likely to fall unexploded near him, to the great danger of his life, had so placed his mortars that the bombs would fall outside the lot where he was and some five hundred feet away on the other side of the river, and in watching them must have seen that this was so; so that it is quite manifest that he was more concerned for his own safety than for that of others and was not so much interested in seeing that they exploded in the air as intended, as in being assured that if unexploded they would not come down and hurt him. It also shows that he fully appreciated the danger to others of what he was doing, and this must also have been manifest to Ricci who was

present with him and who was the active agent of the Providence Fireworks Company in procuring the contract and in seeing that it was fulfilled and who afterwards received the money paid for the display and took his commission, turning over the balance to the company.

It appears in evidence that the City Council of the City of Pawtucket, acting under authority of Pub. Laws, R. I. Chap. 658, January, 1911, had appropriated the sum of $2,000 for the celebration of July 4, 1912, that on March 6, 1912, the city council by joint resolution appointed a joint special committee consisting of two members of the board of aldermen and four members of the common council to make arrangements for the proper observation of Fourth of July and to have charge of the appropriation made for that purpose; this committee consisted of Fred F. Halliday, Jr., and Charles W. Hughes, aldermen, and John T. Kirk, Andrew Cochran, John H. Worthington and Joseph B. Hunt, councilmen. The Pawtucket Board of Trade sent through its clerk to the clerk of this committee the names of Fred Mullen, Arthur T. Smith, Willard L. Wood, John J. Hayes and John J. Beard, all apparently members of the Board of Trade or of a Business Men's Association, or of a Merchants' Association, as it is variously mentioned in the testimony; and all of them were admitted by the joint special committee of the city council to act with them in the matter of the celebration. They all organized as one general committee on April 23, 1912, all meeting together, and appointed Fred F. Halliday, Jr., as chairman, Henry W. Taylor as secretary, and Willard L. Wood as treasurer (Wood being a member of the board of trade and not a member of the city council). This general committee then proceeded to appoint several sub-committees, to wit, a committee on fireworks consisting of Messrs. Hunt, Kirk and Wood (two members from the city council, one member from the board of trade), and Messrs. Cochran, Mullen and Smith "sub-committee for the whole matter" (one member from the city council, two members from the board of trade). These gentlemen from the board

of trade also raised by private subscription about $1,200, in addition to the city appropriation, to be used for expenses, but the evidence does not disclose what it was used for or whether it was in fact used at all.

It appears that this general committee on May 3, 1912, "voted that the matter of fireworks be left in the hands of the committee on fireworks with full power to act;" and that this sub-committee immediately proceeded to negotiate for a fireworks display and that on June 7th the committee on fireworks reported that the contract for fireworks had been awarded to the Providence Fireworks Company; it further appears that this company was a copartnership composed of Paolo di Napoli and Guiseppe Damiani, who had recently become partners, Damiani having previously during the summer seasons worked for Di Napoli in the manufacture of fireworks, and sometimes assisted in giving displays, but that Damiani had not theretofore had the sole charge of any display; he was in sole charge and control of the display in Pawtucket which is here referred to.

The contract above referred to is as follows:

"This Agreement between the City of Pawtucket, a municipal corporation of Rhode Island, executed by its committee for the celebration of the Fourth of July, 1912, and the Providence Fireworks Company, of Providence, R. I.

"Witnesseth:

"That the said Fireworks Manufacturing Company agrees to furnish the fireworks for the celebration of the Fourth of July, 1912, by the City of Pawtucket in accordance with the program attached hereto and made a part hereof for the sum of Five Hundred ($500.00) Dollars and in a manner satisfactory to said Fourth of July Committee.

"That the said city agrees to furnish a satisfactory location for the setting off of said fireworks in said city and to furnish adequate police protection on the said location, and to pay said sum of Five Hundred Dollars upon the proper auditing of accounts by said committee.

"And the said Fireworks Manufacturing Company agrees to save the city harmless from any loss or damage occasioned by any negligence on the part of said company in the carrying out of this agreement.

"Executed on the part of the City of Pawtucket by the Sub-committee on Fireworks of the Committee for the Celebration of the Fourth of July, duly authorized thereto, and on the part of said Fireworks Company by its——————duly authorized thereto.

| Executed in the presence of | Providence Fireworks Co. |
| Harry R. Hornby | Giuseppe Damiani, Sec. |
| | Joseph B. Hunt |
| | John T. Kirk |
| Correct as to form | Willard L. Wood." |
| E. W. Blodgett, City Sol. | |

The "program attached hereto" referred to in the above contract appears not to have been actually attached, but to have been placed in the hands of the sub-committee and has been produced in evidence; and in accordance with this program the display of July 4, 1912, was had; it appears that Damiani was in full charge of the actual setting off of the fireworks, that Di Napoli was not present; that Ricci, the agent, was present except at 6 A. M.; that Joseph B. Hunt, one member of the sub-committee was present on the grounds during the entire display in the evening from 8:30 P. M. till the close, but that he gave no directions nor interfered in any way with the work of the display; it also appears that various other members of the committee saw the display from various points of view in the neighborhood, though they were not upon the grounds known as Goff's Lot; and that none of them interfered or gave any directions as to the display.

The declaration alleged that the defendants planned and arranged for this fireworks celebration and selected the place where the same was to be conducted; and that it was the duty of defendants, their agents and servants to conduct, manage and control said exhibition of fireworks free from

negligence and in such a manner as not to endanger the safety of persons living in the neighborhood where such exhibition was conducted by allowing any aerial bombs, rockets, etc., to be cast or thrown upon the land or property of persons living in the vicinity of said Goff's Lot and particularly to recover and regain any such aerial bombs, rockets, etc., as had not been exploded during such display. The failure of the defendants, their agents and servants to discharge this duty in above particulars was duly alleged, and the injury to the plaintiff was duly alleged as above set forth.

The defendants pleaded the general issue and also filed a special plea setting up that they were members of a committee appointed by resolution of the City Council of Pawtucket, serving without compensation; that they made a contract with the Providence Fireworks Company; that this company was to have and did have the exclusive control and management of the fireworks and was to be responsible for any negligence; and that the defendants were only required by the terms of the contract to furnish a satisfactory location and adequate police protection—and averred that they had provided a satisfactory and suitable location and furnished adequate police protection, and averred further that they had used due care in the employment of said company in contracting with it to give a display of fireworks, and that neither as individuals nor as a committee had they exercised any control over the display of said fireworks, but that the same was exclusively in the hands of said fireworks company.

The plaintiff by replication specifically traversed each of aforesaid allegations.

At the conclusion of the evidence offered by the defendants, the presiding judge, upon motion made on behalf of the defendants, directed the jury to return a verdict in each case for the defendants, to which exception was duly taken; both the cases are now here upon plaintiffs' bills of exceptions, based upon this direction and upon the admission and exclusion of certain testimony.

The trial judge based his direction upon two grounds, viz.: "that the defendants in this case, who were the members of the committee appointed under authority of a vote of the city council, are not liable; and also on the ground that the contract for the furnishing and firing of the display of fireworks was let to contractors, and if any negligence existed, it was the negligence of these contractors; they were, what the law calls, as shown by the evidence in the case, independent contractors."

We are of the opinion that the trial judge was in error on both grounds.

It is to be noted at the outset that the defendants jointly plead in their special plea that they were members of a committee appointed by the city council to serve without compensation; this is a manifest misstatement, as the proof shows that five of them were members of the Board of Trade or Business Men's Association, or Merchants' Association (it is not clear which, as all three terms are used in the evidence); it is immaterial however what was the name of the association to which they belonged; it is only material that they were not members of the city council, were not appointed by the city council and were not in any sense the agents or representatives of the city council or of the city of Pawtucket. There is not a word in the evidence to show that the city council appointed these five men or any of them or that any authority was conferred upon the committee, which was in fact chosen by the city council, to associate with themselves any persons whomsoever. And yet the first thing the appointed committee of six did was to permit these five men from outside to meet and organize with them into a committee of eleven, to participate in the organization, to have members appointed from their number on the various sub-committees and generally to act with the members appointed by the council, to share their responsibilities, and to arrange for the spending of the appropriation

(1) for the celebration. It is manifest that the general committee so organized might be at any time controlled by these outside

members; that at any time a quorum of the committee present at a meeting might have a majority composed of these outside members; and that the whole determination of the business of the committee might be dependent upon these outside members; it appears definitely that the "sub-committee on the whole matter," as it is called, was made up of two outsiders and one member of the council.

All of this action on the part of the members appointed by the city council was plainly without authority; they had no right to admit these outsiders to participate in this celebration as they did, no right to permit them to join in the negotiation of the contract for the fireworks display, or in the fixing of the amount to be paid therefor, or in the determination of the question to whom the contract for fireworks should be let. The members appointed by the city council were "appointed to make arrangements for the proper observation of the Fourth of July, and to have charge of the appropriation made for that purpose as contained in the annual appropriation bill;" they were not authorized to allow any other persons to become members of the committee and to share in any of its business, or in the disposition of the appropriation. Nor had they any right under their appointment or as agents of the city to receive and expend the sum of $1,200 said to have been contributed from outside subscriptions; the evidence does not show what became of this money or how or whether it was used. Even if the joint committee of six duly appointed as above set forth had not permitted these outsiders to share their work, but had acted solely by themselves as they were authorized to do, we are of the opinion that they had the same duties to the public and to the plaintiff and would have been liable to suit.

But we are clearly of the opinion that under the above state of facts, it is idle for these defendants to claim that they were acting as duly authorized agents of the city of Pawtucket. The six members appointed by the city council could not endow the five outsiders with agency for the city

and by acting as they did without authority they must be deemed to have acted upon their personal responsibility, together with the other citizens whom they permitted to join them. Furthermore, by all joining in the special plea, the members of this committee appointed by the city council have placed themselves before the court in the same situation as the outside members, subject to the same duties and liabilities so far as this action is concerned, and all must be treated upon the same basis.

Another thing may here be noted in passing. It is provided by Gen. Laws, R. I. (1909), Chap. 134, Sec. 4, as follows: "Sec. 4. Every person who shall sell, offer for sale, enkindle or use, or suffer to be sold, offered for sale, enkindled or used by his wife, children or servants or other persons whomsoever, any rocket, cracker, squib or other fireworks of a combustible nature ordinarily used for exhibition or amusement, unless he shall previously obtain special license from the town council of the town or the board of police commissioners, as the case may be, and for the purpose of exhibition on a suitable occasion, shall be fined ten dollars for each offence."

It will be observed that nowhere in the resolution of appointment of this committee is anything said about fireworks. There is not a word in the testimony to show that any "special license" was obtained under the above provisions for such exhibition. It will doubtless be claimed that it is generally understood that a fireworks display is a common incident of a Fourth of July celebration in the cities and towns of this country and it is so, undoubtedly; but it is by no means a necessary incident of such celebrations, and has been sometimes omitted.

We think that, under the above provisions of law requiring a "special license," it can hardly be claimed that this general committee, consisting of six members of the city council, augmented without authority as we have seen by five outsiders, had authority without "special license" to procure and authorize and permit a display of fireworks. Even

if it be conceded that the committee of six duly appointed under the joint resolution of the city council had an implied license to give a fireworks display as a part of the celebration (if that can be called a "special license") they certainly had no authority in their turn to grant such license to the outsiders, or to grant to the Providence Fireworks Company a "special license" for the display. We mention this circumstance, although no point is made upon the briefs with regard to it, simply to emphasize the point above made, that these defendants were acting upon their own personal responsibility in giving this display and not as the agents or licensees of the city of Pawtucket. The justice below in his remarks to the jury when he directed them to return a verdict for the defendants referred to the fact that the bill of $500 for fireworks was paid; but it nowhere appears that it was paid by direction of the city council, or that the city council or even the members of the committee had any notice that any injury had been caused to anyone growing out of the fireworks display. For aught that appears it may have been paid simply upon the audit and order of this same committee; and it might further have been paid out of the fund of $1,200 contributed by the outside members. In the present state of the evidence the mere payment of this sum has no special significance.

We do not mean by this discussion to intimate any opinion as to whether the city of Pawtucket may or may not be liable to suit for the damages complained of herein. The city of Pawtucket is not a party to this action and we are not called upon to give any opinion upon that question. But we do not find in any of the cases cited upon the briefs any support for the contention that the defendants are not liable as the authors and promoters of this display; on the contrary we find a number of cases in which such liability has been held to exist, as will appear more fully hereinafter.

(2)    Nor do we find any support for the ruling of the trial judge that the defendants are not liable by reason of the making of a contract with "independent contractors" and of

such contractors doing all the work of the display without direction or interference on the part of the defendants. In the first place we find no evidence in the terms of the contract to support the position that the contractor was an "independent contractor." The contract says that the Fireworks Mfg. Co. agrees "to furnish the fireworks" . . . "in accordance with the program" . . . "and in a manner satisfactory to said Fourth of July Committee." Now although it does not say "furnish and fire," we think it is to be inferred from the whole wording of the contract that it was the intention of the parties thereto that all the firing should be done by the members of the company or its employees; that was the manifest interpretation placed upon the contract by the parties, and by the trial judge, and the contract was so carried out. But it must be noted that this is to be done "in a manner satisfactory to said Fourth of July Committee;" this clause then applies to everything to be done, not only to the quality and extent of the exhibit; but also to the manner of doing the firing; and it seems to us to be unwarranted to say that under this language the committee or any member thereof did not have full authority to control the "manner" of doing anything which had to be done. If it had been observed in any portion of this display during the day or evening that the bombs or other fireworks were being discharged in such a manner as to be dangerous to property or to persons, or so as to show that the man engaged in the work of firing was incompetent, reckless or negligent, it would have been not only the right but the duty of the committee or any member thereof, or of the sub-committee or any member thereof, to have stopped the firing and either to have forbidden the continuance of the display entirely, or to have insisted that the incompetent, reckless or negligent person in charge should be removed, and that a man or men competent for the work should be substituted. We are of the opinion that by the terms of the contract itself the "manner" of doing the work was subject at all times to the full control of the defendants who author-

ized the contract and who were personally responsible as we have shown, and the Fireworks Company was not an "independent contractor" in the sense used in the books. The mere fact that the Fireworks Company was permitted by the Committee to conduct this display through a member of the firm with such assistance as he found necessary and entirely without interference by the committee or any member thereof was entirely immaterial.

But even if the Fireworks Company should be deemed to be an "independent contractor," as ruled by the trial judge, the defendants would not thereby be exonerated. It has (3) been frequently held, that while in many instances the contractee is not responsible for the negligence of an independent contractor where all that is to be done has been put in charge of an independent contractor who hires his own agents and employees and does all the work free from any control or right of control as to details by the contractee, yet there is a notable and important exception to this doctrine where the contract calls for the doing of things which are in their very nature liable, unless precautions are taken, to do injury to others. In these latter cases a duty arises on the part of the contractee to see to it that these precautions are taken; and he cannot escape his duty by turning over the whole performance to a contractor.

The case of *Bianki* v. *Greater American Exposition et al.*, 3 Neb. (unoff.) 656, is very similar in its facts to the case at bar and the principles discussed therein are directly applicable here. In that case it appears that plaintiff, a minor of the age of five years, by his next friend sued the Greater American Exposition, Pains' Fireworks Company and others to recover damages suffered by plaintiff by reason of a bomb which was set up by Pains' Fireworks Company at a display given on the grounds of the Greater American Exposition in Omaha, Neb., which bomb was intended to explode in the air, but did not, and fell outside of the defendants' grounds upon the premises of plaintiff's father. The opinion says, on p. 660: "Plaintiff says 'that on the 22d day of July, 1899, he was

living with his parents on the corner of Commercial and Ames avenue and two blocks north of the exposition grounds aforesaid: that while playing in his father's yard and on his father's premises on the evening of said date he picked up one of said unexploded bombs aforesaid from said grounds and premises belonging to his father, and being wholly unaware of any danger and without any manner of negligence on the plaintiff's part, began to handle and examine the same, when suddenly, without any warning, said bomb exploded in plaintiff's left hand." The petition further set forth the effects of said explosion and the injuries caused to the plaintiff thereby, and concluded with a prayer for a judgment against the defendants for $10,000 and costs of suit." . . . The case was heard on demurrers to the petition in the lower court, the demurrers were sustained, the suit dismissed and the plaintiff alleged error. After discussing the allegations of the petition and the demurrers filed separately in behalf of the defendants, and determining that it was not necessary under the ordinance of the city to obtain permission from the mayor to discharge fireworks on private grounds, and that the petition did not set forth facts sufficient to constitute the acts complained of a public nuisance, the opinion goes on to say: (p. 662) "It follows that if the defendants are liable in this case at all they are not liable for a violation of the law, or the commission of unlawful acts, or for the maintenance of a public nuisance, but are liable for the negligent, unskillful and careless performance of an act legal in itself. An examination of the petition satisfies us that the allegations are sufficient to constitute an act of negligence on the part of the defendant, the Greater American Exposition. The thing which it employed Pains' Fireworks Company to do for it, while lawful, was a dangerous thing to do, by reason of the means and agencies employed therein. It is beyond question that one engaged in handling fire-arms or fireworks and other dangerous explosives, must exercise a degree of care commensurate with the danger involved. Thomas, Negligence, page 678.

It was negligence on the part of Pains' Fireworks Company to so manufacture its explosives and dynamite bombs that they would fail to explode when high in the air and thus eliminate from such exhibition all elements of danger. It was negligence for it to fire, propel, and throw such bombs and other explosives into the air at such an angle as would cause then to fall outside of the exposition grounds and upon public or private premises. It was negligence to allow and permit said unexploded bombs to be and remain upon private premises where they might be picked up, handled and exploded by unsuspecting persons, to their injury and damage. It is beyond question that the fireworks exhibition mentioned in the petition was done for and on behalf of the Greater American Exposition. It is alleged that Pains' Fireworks Company was employed by it to give such exhibition. Therefore, according to the allegations of the petition, the Fireworks Company was its agent. The principal is liable for the acts of his agent within the scope of his authority. This rule depends upon the fact that the relation of principal and agent exists. In this case it was the will of the Greater American Exposition that was exercised; it was its purpose that was accomplished; it derived the benefits and advantages which ensued therefrom; it selected its own agent, the Fireworks Company, put said company in motion, and had the right to direct and control its actions. It is therefore just and proper that it should be held responsible for what its agent did. Mechem, Agency, Section 747. It follows that the defendant, the Greater American Exposition, is liable to the plaintiff for the damages sustained as set forth in the petition, unless it is relieved from such liability by the fact that Pains' Fireworks Company was an independent contractor. While it has often been held that the owner of premises, who has put an independent contractor in charge thereof, is relieved from liability for damage to persons injured by the acts of such independent contractor, on the other hand it is the duty of every one who does in person, or causes to be done by another, an act which from its nature is liable,

unless precautions are taken, to do injury to others, to see to it that those precautions are taken; and he can not escape his duty by turning the whole performance over to a contractor. Of the same nature is the duty which the law imposes upon every person who, for his own purposes, brings on his lands and collects or keeps there anything likely to do mischief if it escapes, to keep it in at his peril; and if he does not do so, he is *prima facie* answerable for all the damage which is the natural consequence of its escape. The distinction is, when the work is one that will result in injury to others unless preventive measures be adopted, the employer can not relieve himself from liability by employing a contractor to do what it was his duty to do, to prevent such injurious consequences. It is one's duty to so conduct his own business as not to injure another, and this duty continuously remains with the employer. According to the allegations of the petition Pains' Fireworks Company was the agent of the Greater American Exposition and so far as it appears therefrom was not such an independent contractor as would relieve the exposition from liability for the unlawful, negligent and careless act of its said agent. We therefore hold that the petition stated a cause of action against the Greater American Exposition, and its demurrer thereto should have been overruled."

(4) That it is actionable negligence to leave bombs or other explosives in a position where they are liable to be found and exploded by children to their injury, see *Wells* v. *Gallagher*, (Ala.) 3 L. R. A. N. S. 759; *Barnett* v. *Cliffside Mills*, 83 S. E. (N. C.) 826; *Pittsburg, &c., Ry.* v. *Shields*, 47 Ohio St. 390. That it is actionable negligence so to fire bombs that they will fall upon the spectator standing where he is expected to stand to view the display, see *Colvin* v. *Peabody*, 155 Mass. 104.

In the case of *Cornwell* v. *Bloomington Business Men's Association et al.*, 163 Ill. App. 461, the plaintiff was injured at a public fireworks display in the city of Bloomington, Ill., on the Fourth of July, by the explosion of a rocket which,

after being fired, had fallen to the ground from the rack
furnished by the Business Men's Association for the purpose
of the display; the rocket shot along the ground and hit the
plaintiff in the leg while he was seated upon the ground,
broke his leg and caused a very painful injury.   The suit
was brought against the Business Men's Association, the
Paul F. Beich Company, who sold the fireworks to the Asso-
ciation for the display, and St. Louis Fireworks Company,
which actually furnished the fireworks.   Representatives of
all three of the defendants were present, participated in, and
assisted in the arrangement, management and display of these
fireworks.   It appears also that a lawful permit was obtained
to have the display in the Court House Square.   The jury
returned a verdict for the plaintiff against all three defend-
ants and they appealed.   In the course of its discussion,
the appellate court said, p. 463:   "Defendants insist upon
a reversal of the judgment, urging that the display being a
popular Fourth of July celebration and one being par-
ticipated in by everybody present, that all who came as
spectators assumed all risk of an injury; that the celebration
being in commemoration of a national holiday and one
generally endorsed and participated in by the general
public, the defendants would not be liable unless the injury
was wilful; that there is no joint liability in this case, that
the verdict is not warranted by the evidence and that the
court committed various errors in its rulings upon the trial."

. . .

(p. 465)   "The celebration was originated by the Bloom-
ington Business Men's Association, it was through the Paul
F. Beich Company that the fireworks were secured and the
St. Louis Fireworks Company assisted in the discharge of
the fireworks.   Each of these parties was present and took
part in the display, management, or control of the celebration
by parties who did and were authorized to represent them
in that capacity.   The representatives of the Paul F. Beich
Company placed the rocket which caused the injury upon
the rack, the rocket was not securely fastened or placed in

position and by reason thereof fell to the ground; while it was in such insecure position upon the rack it was ignited by the agent and representative of the St. Louis Fireworks Company; and the Bloomington Business Men's Association were the parties who originated and carried on this celebration. The question as to whether or not each or all of the defendants contributed in any manner or were jointly engaged in the carrying on of the celebration were questions of fact to be determined by the jury, and by their verdict they have determined this question adversely to the contention of the defendants, and unless their verdict is clearly against the manifest weight of the evidence it should not be disturbed by this court, and we are of the opinion that the verdict is fully warranted by the evidence.''

The particular point of this case last cited is to show liability on the part of the Business Men's Association, although they appear to have acted upon proper permission granted by public authority. They appear to have been in substantially the same legal situation as to their liability for the negligence of their agents as were the defendants in this case. As we have seen, the defendants in this case had the right to control this display if they saw fit, and it was their duty to see that proper precautions were taken; the fact that they did not interfere in no way affects their liability.

In the case of *Jenne* v. *Sutton*, 43 N. J. Law, 257, it appeared that Jenne was the president of a political club known and incorporated under the name of the Pavonia Club; that said Jenne, who was the defendant below and plaintiff in error in the court of errors and appeals, had ordered a fireworks display in one of the public streets in Jersey City where it was customary to have such displays, to signalize a meeting of said club, and paid the bill for said fireworks and for the services of the operator. It was held that Jenne was personally liable to the plaintiff who was injured by the explosion of a bomb during the display. The court says on p. 258: ''It is not an unreasonable presumption that he intended that these explosives should be

set off in the public street, which was the usual place on the occasions of the meeting of this club. Such an act and purpose would make him responsible to the plaintiff; for it can signify nothing, under such circumstances, that he was acting in his official capacity as the president of this corporation; for all the participants in the creation of a public nuisance are liable to answer for its ill effects, without regard to the fact that they, in such affairs, were but the agents of other persons."

In the case last cited we are not unmindful of the fact that the court finds the act done at the order of the defendant being a fireworks display in a public street, to have been a nuisance *per se*, whereas in the case at bar, it must be held, under the authority of the case of *Bianki* v. *Greater American Exposition et al.*, *supra*, and of the other cases hereinafter cited, that the fireworks display was not a nuisance *per se*, being held not upon a public highway, but upon private property; but under the authority of the same cases, it was a question for the jury whether the display was in fact a nuisance, growing out of the place where and the manner in which it was in fact conducted. And the purpose of citing the case of *Jenne* v. *Sutton*, *supra*, is to show that the promoters of such a display may be held personally liable for damages resulting therefrom.

In *Landau* v. *City of New York*, 180 N. Y. 48, it appeared that the board of aldermen suspended an ordinance of the city forbidding fireworks displays for a period from October 27 to November 10, 1902, during the political campaign of 1902, so far as the provisions thereof "may apply to meetings and parades of political parties or associations during the campaign of 1902;" that on the evening of election day, November 4, 1902, a great display of fireworks was held in Madison Avenue, adjoining Madison Square, and there occurred an explosion of fireworks, whereby eighteen persons were killed, including the plaintiff's intestate, and about two hundred persons were injured. In discussing the question of nuisance the court said, p. 55: "There is a

distinction, well recognized by law, between the discharge of fireworks upon private property and in a public highway. There is also a distinction in this regard between highways, depending on their location, the extent of the traffic upon them and the danger involved in case of accident. Fireworks in certain streets may or may not be a nuisance, according to the circumstances, which usually present a question of fact. In the case now before us we have to do with a crowded street, near the center of the largest city on the continent, 'where any misadventure in managing the discharge would be likely to result in injury to persons or property.'

"Fireworks exhibited on an extensive scale in a great thoroughfare, in the midst of a large city, where a vast multitude of people is assembled, if not a nuisance as matter of law, may properly be found such as matter of fact. This was so adjudged in the *Speir* case, which is controlling in principle. While such displays are sometimes tolerated, they are not authorized, and whoever is responsible for them must run the risk of liability for the consequences, so far as they result in injury to person or property. (*Conklin* v. *Thompson*, 29 Barb. 218; *Jenne* v. *Sutton*, 43 N. J. Law, 257; *Little* v. *City of Madison*, 42 Wis. 643.")

The court then discusses the question of the suspension of the ordinance, whereby this display was permitted and its effect in relation to the liability of the city of New York, and holds that the city became liable by reason of such permission, and reversed the judgment of the lower courts in dismissing the complaint, and ordered a new trial.

As before stated, under the authority of the above cited cases and of other cases cited below, in view of all the facts in this case and particularly of the fact that it appeared that a large number of bombs and other fireworks were so discharged that the debris therefrom came down upon private property at a distance and where people were standing to watch the display and that it was testified that several bombs which failed to explode came down at a distance of

upwards of 500 feet or more from the display upon private property and that one of these unexploded bombs caused the injury complained of, it was a question for the jury to determine whether this display was in fact a nuisance liable to cause injury by reason of the manner in which it was conducted and of the negligence of the defendants or their agents. See, also, *Speir* v. *City of Brooklyn*, 139 N. Y. 6; *Melker* v. *City of New York*, 190 N. Y. 481; *Walker* v. *City of New York*, 95 N. Y. Supp. 121; *Crowley* v. *Rochester Fireworks Company*, 183 N. Y. 353.

In *City of New York* v. *Lloyd*, 133 N. Y. Supp. 118, it was held that where the city had had to pay a judgment in a suit for personal injuries resulting from a fireworks display, it could recover from the contractor for the display, although he did not take personal charge of the display, but furnished the actual operator.

An interesting and instructive case growing out of the same explosion of fireworks in Madison Avenue and the resulting injuries therefrom, already referred to in the cases of *Landau* v. *City of New York*, *supra*, and *Melker* v. *City of New York*, *supra*, is the case of *City of New York* v. *Hearst*, 126 N. Y. Supp. 917. William R. Hearst was the president of the National Association of Democratic Clubs, an unincorporated association consisting of seven or more persons. It was admitted that Hearst was the president of the association and that the association caused the display of fireworks, employing for that purpose a firm experienced in the business. It was held that Hearst was liable to pay to the city of New York the amount of a judgment which had been recovered against the city for injuries resulting to a person who was present at the celebration. In this case again we see that the individual promoter of the fireworks display was held liable for the injuries resulting from the explosion. See, also, *Doughty* v. *Atlantic City Business League*, 80 Atl. 473.

The same principles with regard to the employment of contractors have been long settled in cases of work done by owners

of property or on streets and highways by municipalities
and their agents.  After discussing the general rule as to
independent contractors and the non-liability of the con-
tractee for the negligence of independent contractors and
their employees, Dillon in his work on Municipal Corpora-
tions (4th ed.) Vol. 2, p. 1306, says (§ 1029): "The general
rule is stated in the preceding section, but it is important to
bear in mind that it *does not apply where the contract directly
requires the performance of a work intrinsically dangerous,*
however skillfully performed." See cases cited.  See, also,
3 Dill. Mun. Cor. (5th ed.) p. 1864, § 1174 and cases cited.
See, also, 26 Cyc. p. 1559, c; 13 Am. Dig. Dec. p. 1242, § 319.
Many cases in support of this general statement have been
cited on the plaintiff's brief and they have all been carefully
examined and considered; it is not however necessary to
cite and review them here, but only to say that they fully
support such general statement, and also fully support the
principles set forth in the cases above cited and from which
we have quoted.

(5)     The trial judge in his ruling heretofore referred to and
the defendants in their brief seem to claim that the defend-
ants, by virtue of the appointment of the joint special
committee by the City Council of Pawtucket, became "public
officers," and that as such they are exempt from liability
in this action.  We cannot accede to this contention.  They
were in no sense "public officers" under any of the cases
cited nor under any principles of law which we know of.
"Public Officers," as defined by the cases cited, are such
officers as are required by law to be elected or appointed and
whose duties are prescribed by law, such as surveyors of
highways, school committees, assessors and collectors of
taxes and such other state and municipal officers who act
not by virtue of authority conferred by ordinance or resolu-
tion but by virtue of the acts of the legislature.  See *Hill* v.
*Boston,* 122 Mass. 344, & cas. cit.; *Tindley* v. *Salem,* 137
Mass. 171, 173 & cas. cit.; *McKenna* v. *Kimball,* 145 Mass.
555.  The statutes of this state merely permit cities and

towns to expend certain limited amounts of money for public celebrations, which may include fireworks; but they do not impose any duty to give such celebrations, nor to display fireworks as a part thereof, nor do they prescribe any "officers" by whom such celebrations shall be conducted. The case of *Tindley* v. *Salem*, 137 Mass. 171, cited by the court below and also by the defendants had no bearing upon the liability of these defendants, being simply to the effect that a *city* which, under certain provisions of law, undertakes the celebration of a holiday exclusively for the gratuitous amusement of the public, is not liable to an action by one who sustains personal injuries, through the negligence of servants of the city in discharging fireworks for the purposes of the celebration. The findings of this case do not in any way relieve from liability the individuals who were responsible (as in the case at bar) for the conduct of the celebration. Indeed in the case of *Kerr* v. *Brookline*, 208 Mass. 190, a case quite similar to *Tindley* v. *Salem*, *supra*, which it quotes and follows, it is said by the court, after stating the decision in *Tindley* v. *Salem*, and referring to *Hill* v. *Boston*, *supra*, p. 191: "A reason lying deeper still is that a city can act only by officers, agents or servants. If there is negligence in the management of the business or in doing the work, it is that of the person or persons who represent the city. While it is reasonable that these individuals should be held liable for their negligence to anyone injured by it (see *Moynihan* v. *Todd*, 188 Mass. 301), it is not thought to be reasonable that a municipality or a public officer, who is engaged upon a public work conducted for the benefit of the people and not for gain, should be held liable for the negligence of his servants or agents under the doctrine "*respondeat superior.*" We do not see how it is possible for the defendants to draw from these cases any support for their contentions. On the contrary we think they tend to support the argument from the plaintiff. (See *Moynihan* v. *Todd*, *supra*.)

The cases at bar are founded upon the negligence of the defendants through their agents, and not upon the theory of

a nuisance *per se,* where it is held that no negligence need be proved. The negligence of the defendants as set forth in the declaration, consists substantially in causing or permitting to be done acts in themselves dangerous on account of the explosives used in the display and requiring special precautions to be taken to prevent injury to persons and property; and in permitting explosive bombs to be so discharged by the agents of the defendants as to fall upon private property while unexploded and there to remain without recovery until found by the plaintiff, John Sroka, and then exploded to his great injury.

The issues tendered by defendants' special plea, and put in issue by special replication, were that the defendants were members of a joint special committee duly appointed to have charge of the celebration and of the appropriation therefor, serving without compensation; that they made a contract for the fireworks display, under which the contractor was independent of their control; that the defendants were only required to furnish a satisfactory location, and adequate police protection, which they did; that they used due care in the employment of the contractor, and none of the defendants either as individuals or as a committee exercised any control over the display, but that the same was exclusively in the fireworks company.

We have already discussed the evidence and the law with regard to the issues tendered as to the liability of the defendants, both as to their status as members of a committee and as to their responsibility under the contract; there was evidence from which the jury might have found that there was negligence in the performance of the fireworks contract by the Fireworks Company which was in our opinion the agent and subject to the control of the defendants, and that the defendants were liable for that negligence and the consequent injury. Under the circumstances of these cases, and in view of the fact that the injury caused resulted from firing the bombs in such manner that unexploded bombs fell far outside of Goff's lot, it is quite immaterial whether

Goff's Lot was a suitable location for the display. It might have been suitable for all of the display except the bombs, and suitable for them if they had been properly fired. There was but little evidence offered on this subject and none by the plaintiffs. As to adequate police protection it appears that such was furnished directly about the grounds so far as handling the crowd was concerned; but it does not appear that anything was done by way of watching the discharge of the bombs, or to prevent them from being so fired as to fall without the enclosure, and at a distance where injury was likely to be caused.

There was ample evidence which should have been submitted to the jury and it was error for the trial court to take the case from the jury and to direct a verdict for the defendants. The plaintiffs' fourth exception is sustained.

With regard to the first exception, no allusion to the same was made either in brief or argument and it is deemed to be waived.

(6)   With regard to the second exception, it is founded upon the admission of the following question asked of Mr. Hunt, a member of the committee and one of the defendants; (Tr. p. 179) "101 Q. As to that location from your experience, as a member of the sub-committee on fireworks, for 2 previous years, do you consider it a good location for setting off the fireworks? A. Yes, sir." (Exception was noted.) We think that this exception should be sustained. Mr. Hunt was not qualified as an expert in fireworks display to give such an opinion by any previous testimony. He could have been asked what had been done in this lot in previous years, and could have stated, if he knew, the nature of the previous displays, by way of comparison with the one in question, and whether any previous damage had been done. He was not asked these questions, but simply to give his opinion in general terms. This exception is sustained.

The third exception is founded upon exclusion of certain questions as to the financial responsibility of the Providence Fireworks Company; we think these questions were imma-

terial and were properly excluded. The Providence Fireworks Company was not a party to the suits, no recovery was sought against it, and there is nothing in the pleadings to raise any such issue. This exception is overruled.

The two cases are remitted to the Superior Court with direction to grant a new trial in each case.

*John P. Beagan, John J. Richards,* for plaintiffs.
*Edward W. Blodgett, Thomas P. Corcoran,* for defendants.